# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **BETHANY L. RYAN,**            :<br>   **Plaintiff**                        :<br>                                         :<br>       **v.**                            :<br>                                         :<br>**FAMILY DOLLAR STORES OF** :<br>**MASSACHUSETTS, INC.,**       :<br>**DEBBIE LINEBERGER, individually** :<br>**and in her capacity as area operations** :<br>**manager, and ERNIE FRAZIER,** :<br>**individually and in his capacity as** :<br>**performance manager,**         :<br>        **Defendants**              :<br>                                         : | **C.A. No.** |

## COMPLAINT AND JURY DEMAND

### I. Introductory Statement

This is an action brought by the Plaintiff, Bethany L. Ryan, against Defendants Family Dollar Stores of Massachusetts, Inc., Debbie Lineberger, and Ernie Frazier, for violations of her legal rights as they relate to her employment. In sum, the Plaintiff alleges that, while employed by Family Dollar, she was entitled to overtime wages that were never paid in violation of federal and state wage and overtime laws, suffered discriminatory treatment due to use of medical leave and physical disability, and was summarily dismissed due to her disability and in retaliation for availing herself of protected medical leave under federal and state law. The Plaintiff seeks damages for these statutory violations as well as related common law torts.

### II.  Jurisdiction

1. This action involves application of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §1201, *et seq.*; the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*; the Massachusetts Family and Medical Leave Act,

M.G.L. ch. 149 §52D; the Massachusetts Anti Discrimination Statute, M.G.L. ch. 151B §1, *et seq.*; the Massachusetts Overtime Act, M.G.L. ch. 151 §1, *et seq.*; and a number of related state torts.

2. This Court has jurisdiction pursuant to the following statutes: 29 U.S.C. §2617, 28 U.S.C. §1331, and 28 U.S.C. §1367.

### III.  Venue

3. Venue is appropriate in this judicial district under 28 U.S.C. §1391(b) because the events that gave rise to this Complaint occurred in this district.

### IV.  Parties

4. The Plaintiff, Bethany L. Ryan ("Ryan"), is a resident of the Town of Abington, Plymouth County, Commonwealth of Massachusetts.

5. Defendant Family Dollar Stores of Massachusetts, Inc. ("Family Dollar") is a corporation organized and operating under the laws of the Commonwealth of Massachusetts with a principal office located at 10401 Monroe Road, Charlotte, North Carolina, and is a subsidiary of Family Dollar Stores, Inc.

6. Defendant Debbie Lineberger ("Lineberger") is an individual who, upon information and belief, was at all times relevant herein the area operations manager for Family Dollar for the area in which the Plaintiff worked.

7. Defendant Ernie Frazier ("Frazier") is an individual who, upon information and belief, was at all times relevant herein the area performance manager for Family Dollar for the area in which the Plaintiff worked.

## V.  Exhaustion of Administrative Remedies

8.  On or about February 23, 2012, Ryan filed charges alleging disability discrimination by Defendants with the United States Equal Employment Opportunity Commission (the "EEOC").

9.  On or about July 20, 2012, upon a Request by Ryan that she be granted the right to sue, the EEOC issued a Notification of Rights to her, terminating its processing of her charges and granting her the right to initiate suit.

## VI. Allegations Common to All Causes of Action

10. Ryan was initially hired by Family Dollar on or about July 3, 2006, as a Store Manager to work in the Randolph, Massachusetts store. Ryan worked at various stores within Family Dollar's Massachusetts territory until March, 2010, when she voluntarily resigned.

11. Although Ryan was designated as a Store Manager during this period of time, she spent 80-90% of her time performing non-managerial duties, such as stocking shelves, running cash registers, unloading trucks, and cleaning.

12. In addition, during this initial employment term with Family Dollar, all consequential managerial decisions were made by the District Managers, such as instituting store operating procedures; monitoring inventory and sales figures; monitoring weekly payroll; controlling employee pay rates and pay raises; issuing to-do lists and instructions to store managers; supervising the pricing and display of merchandise; and closely monitoring every aspect of store operations, including hiring and termination decisions.

13. During her 2006 through 2010 tenure with Family Dollar, Ryan regularly worked in excess of forty (40) hours per week but was never paid overtime wages for those hours as Family Dollar had classified her as an "exempt" employee.

14. On June 8, 2010, Ryan was re-hired by Family Dollar to work at the East Ashland Street (Brockton) store and, approximately 2 weeks later, she was assigned to be the Store Manager of the Crescent Street (Brockton) store.

15. Ryan's employment with Family constituted an enforceable contract.

16. As with her previous employment term with Family Dollar, although Ryan was designated as a Store Manager, she spent 80-90% of her time performing non-managerial duties (as she had done during her previous tenure with Family Dollar), such as stocking shelves, running cash registers, unloading trucks, and cleaning.

17. During this second employment term, as with her first employment terms, all consequential managerial decisions were made by the district managers, such as instituting store operating procedures; monitoring inventory and sales figures; monitoring weekly payroll; controlling employee pay rates and pay raises; issuing to-do lists and instructions to store managers; supervising the pricing and display of merchandise; and closely monitoring every aspect of store operations, including hiring and termination decisions.

18. During this second employment term with Family Dollar, Ryan regularly worked in excess of forty (40) hours per week but was never paid overtime wages for those hours as Family Dollar had classified her as an "exempt" employee

19. From about August, 2010, through September, 2010, Ryan took a medical leave of absence after suffering medical complications related to her pregnancy, requiring the surgical termination of her pregnancy.

20. During this period of time that Ryan was out of work on medical leave, Lineberger was installed as the Area Operations Manager and Frazier was installed as the Performance Manager for Ryan's store.

21. When Ryan returned to work from medical leave (in or about mid-September, 2010), her treating physician placed express limitations on her physical activity which, among other things, prevented her from lifting items in excess of 15 pounds.

22. On her first day back at work from medical leave, Frazier visited Ryan's store and immediately stated to her, "We're not getting off on the right foot here," referring to Ryan's medical leave and implying that her absence while on leave was a problem with Family Dollar.

23. Frazier then gave Ryan a long "list" of tasks he wanted her to perform before she left that day, which was not capable of being completed by Ryan because much of the work on the list involved strenuous physical activity (which Ryan was precluded from undertaking) and there were insufficient man-hours available to complete all the work because only Ryan and one cashier were scheduled for that day.

24. After Ryan reviewed the list, she informed Frazier that the task list was not achievable, to which Frazier got visibly upset and stated that he, "would never have allowed [Ryan] to return had [he] known of the restrictions. Family Dollar doesn't have light duty" Frazier then stated, "You're here now, so you have to stay."

25. After Frazier left, Ryan began to work on the task list, feeling that she had no choice but to do as Frazier had instructed. Shortly thereafter, Ryan began to experience pain at the point of her incisions from the recent surgery.

26. Ryan completed her shift and then went to the hospital for evaluation of her pain then and followed up with her primary care physician. It was determined that Ryan had not injured herself but had attempted to do too much physical work in an effort to complete Frazier's task list.

27. Ryan was then placed on medical leave through October 17, 2010, at which point it was expected she would be able to resume full duty. Once Ryan completed this medical leave, she returned to her store to work.

28. At or about the time Ryan returned to work, Lineberger came to her store and Ryan informed Lineberger what Frazier had said and how he had treated her. Upon information and belief neither Lineberger nor Family Dollar responded to Ryan's report.

29. In the ensuing months, Ryan regularly expressed dismay to Lineberger and Frazier with the amount of man-hours she was allotted and the difficulty in meeting all her obligations as a Store Manager when she was continually required to shoulder so many other tasks that should have been typically be assigned to support staff.

30. During this period of time, much of Ryan's work day was taken up performing physical labor and other jobs that would normally have been taken up by support staff if she had the resources to hire more people.

31. Upon information and belief, Ryan's store was receiving fewer man-hours than the other stores in the region. As a result, Ryan would often be forced to work extra hours in order to complete all the tasks required by Lineberger and/or Frazier.

32. As a result of the increase in physical tasks, Ryan began to develop physical pain in her back, chest, and feet.

33. On or about July 29, 2011, Ryan reported to Lineberger her ongoing frustration with inadequate man-hours and 70-90 hour workweeks. Ryan also reported her frustration with Family Dollar's previous failure to pay her for time worked, sick time, vacations, etc.

34. On or about that same time, Lineberger came to Ryan's store and presented to Ryan an Inventory Estimate Worksheet which purported to show that that Ryan's store had an "Estimated Shrink Percentage" of 3.99%. This figure translated into approximately $43,000.00.

35. On or about August 8, 2011, Lineberger presented to Ryan a Performance Improvement Action Plan denoted as "Written Counseling" for "Failure to protect company assets resulting in an increased shrink result." On that form Ryan noted that, "Much of the shrink relates to my leave of absence & not having adequate payroll hrs to oversee shrink."

36. Based upon Ryan's knowledge of Family Dollar's policies and targets, the inventory figures were not particularly egregious such that a disciplinary warning was warranted. Moreover, Lineberger disregarded Family Dollar's progressive discipline policy, which indicates that "Verbal Counseling" is the first step, followed by "Written Counseling," "Decision Making Step/Final Warning," and then "Discharge."

37. On August 14, 2011, after suffering from chest pains while at work, Ryan went to her doctor where it was determined that she had suffered from a muscular-skeletal pull likely related to the physical work she was performing at her store. Ryan informed Lineberger of her status and was placed on medical leave through August 25, 2011.

38. Ryan continued to suffer from serious pain in her left foot and, upon her return to work on August 15, 2011, she was unable to work a full day due to the physical demands of the job and the exacerbation of the pain. Ryan then left work and sought medical treatment.

39. After medical evaluation, Ryan was placed on medical leave by her doctor, as suffering from plantar fasciitis. Her expected return date was to be September 22, 2011.

40. When Ryan informed Lineberger of her medical leave, Lineberger responded by telling Ryan that she should tell her doctor to giver her a Cortisone shot so that she "could get back to work."

41. Over the ensuing weeks, Ryan's "return date" remained uncertain as her doctor continued to treat her. Ultimately, Ryan was cleared by her doctor to return to work on September 22, 2011.

42. Prior to that date, on September 20, 2011, Ryan sent a text message to Lineberger informing her that she would be returning on September 22, 2011. In addition, Ryan faxed a doctor's note (clearing her to return) to the Family Dollar Leave of Absence (LOA) department in North Carolina on September 21, 2011.

43. In order to be certain that she could return on September 22, 2011, Ryan called the Family Dollar LOA department to confirm they had everything they needed. Family Dollar LOA personnel told Ryan that everything was in order and she could return on September 22, 2011, as her doctor had indicated.

44. Despite the approval of her doctor and Family Dollar's LOA department, Lineberger refused to allow Ryan to return on September 22, 2011, telling her instead to report on September 26, 2011, to Lineberger's office to discuss a plan.

45. Ryan immediately became concerned about her employment status and was fearful that she may be terminated because of her medical leave, especially in light of how she had been treated by Family Dollar management upon her return from a prior medical leave.

46. Ryan then telephoned the Family Dollar LOA department and informed them that Lineberger wouldn't allow her to return to work on September 22, 20122. Family Dollar LOA personnel indicated they would look into the matter but never responded to Ryan.

47. On September 26, 2011, Ryan met Lineberger in the Dorchester (Mass.) office and presented her doctor's note approving her return to work. When Ryan arrived at the Dorchester office, Lineberger immediately began to address Ryan in an aggressive and accusatory manner.

48. During the meeting, Lineberger expressed her discontent with Ryan's medical leave by telling her that she (Lineberger) was upset that Ryan went on a medical leave of absence without telling any of her people.  This was untrue as Ryan had sent an email to her staff prior to taking leave.

49. Lineberger also stated that she wanted to talk about Ryan's career at Family Dollar and told Ryan that, in her opinion, Ryan "didn't seem happy" working for Family Dollar and didn't want to be part of Lineberger's team and that if she (Ryan) did not want to be part of her team, that Lineberger didn't want Ryan on her team.

50. This conversation caused an extraordinary amount of stress and anxiety for Ryan, who felt that Lineberger was trying to get her to resign—something Ryan did not want to do as her job was her sole source of income.

51. Lineberger then told Ryan that she could not return to Family Dollar as a Store Manager. When Ryan asked Lineberger why she would not be allowed to return as Store Manager, Lineberger denied making such a statement and stated that Ryan "must be hearing things." Lineberger then told Ryan that, "Your replacement is doing better than you," further upsetting her.

52. After the meeting, Ryan went to her store and discovered that a person named Dave had been working there as Store Manager while she was on medical leave. Dave gave Ryan the keys to the store and left to go to another store. Ryan then worked at her store the entire week and, as it turned out, a store inventory was scheduled for Friday, September 30, 2011.

53. The results of the September 30, 2011, inventory showed approximately $73,000.00 in losses, with some $30,000.00 occurring during the six weeks Ryan was on medical leave. Also on September 30, 2011, Frazier prepared Inventory sheets for Ryan's store that were presented to Dave at another Family Dollar store, to be signed and dated by him for September 30, 2011.

54. In addition, Lineberger prepared an audit for Ryan and graded it high, yet placed Dave's name on the form. Furthermore, Dave remained listed as the Store Manager in Ryan's store computer system. All of these circumstances gave Ryan fear that she was being targeted to be terminated.

55. According to the audit conducted by Lineberger, the results were not good. Despite the fact that Dave's name was listed on the audit results sheet, Lineberger informed Ryan that she was holding her responsible for the poor inventory results.

56. At that point, sensing that Lineberger had it in for her, Ryan asked Lineberger whether she was being fired. Lineberger responded that she would first need to speak with other Family Dollar officials and would inform Ryan the following Monday if she was being terminated.

57. The uncertainty in Ryan ongoing employment with Family Dollar created and extraordinary amount of stress and anxiety while she awaited word from Lineberger whether she still had a job.

58. That following Monday, Ryan went to work at her store and noticed that Dave's name was still listed in the computer as store manager, causing further anxiety about her employment status. Ryan worked a full day and then had a conference call with Lineberger the following day (Tuesday), during which Lineberger asked Ryan how she knew she was going to be fired, to which Ryan responded, "It was obvious." Lineberger then terminated Ryan but failed to provide a specific reason for the termination.

59. As a result of her termination from employment with Family Dollar, Ryan has suffered a loss in wages and benefits and other consequential damages.

## V.  Claims For Relief

60. The Plaintiff incorporates in each of the counts below the allegations contained in paragraphs 1 through 59 above.

## Count One
## Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601, *et seq.*

61.  The actions of Defendants, including but not limited to those described herein, constitute a

violation of the Family and Medical Leave Act 29 U.S.C. §2601, *et seq.* insofar as Defendants

retaliated against the Plaintiff for taking medical leaves when they discriminated against her in

the terms and conditions of her employment by (1) placing unrealistic expectations on her upon

her return from medical leave and (2) terminating her employment within days after returning

from medical leave without any legitimate grounds to do so, causing the Plaintiff to suffer

damages as aforesaid, and thereby depriving the Plaintiff of rights secured under the FMLA.

## Count Two
## Americans with Disabilities Act, 42 U.S.C. §1201, *et seq.*

62.  The actions of Defendants, including but not limited to those described herein, constitute

unlawful discrimination against the Plaintiff in employment on account of her disability insofar

as the Plaintiff's diagnosed condition of plantar fasciitis is a physical impairment that

substantially limits one or more life activities and this disability was a motivating factor in

Defendants' discriminatory and abusive conduct toward the Plaintiff in violation of the

Americans with Disabilities Act, 42 U.S.C. §1201, *et seq.* ("ADA"), causing the Plaintiff to

suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under the ADA.

## Count Three
## Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*

63.  The actions of Defendants, including but not limited to those described herein, constitute

violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* insofar Family Dollar failed

and/or refused to pay the Plaintiff overtime wages for all weeks in which she worked in excess

of forty hours by wrongfully designating her as an exempt employee. This failure and/or refusal

was willful and knowing as Family Dollar was on notice in 2008 that a federal court had

determined its store managers to be entitled to overtime compensation as the were not properly classified as exempt employees (*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), such willfulness extending the time frame for which the Plaintiff can seek compensation under the FLSA to three years.

### Count Four
### Massachusetts Family and Medical Leave Act

64. The actions of Defendants, including but not limited to those described herein, constitute a violation of the Massachusetts Family and Medical Leave M.G.L. ch. 149 §52D, *et seq.* ("MFMLA") insofar as Defendants retaliated against the Plaintiff for taking medical leaves when they discriminated against her in the terms and conditions of her employment by (1) placing unrealistic expectations on her upon her return from medical leave and (2) terminating her employment within days after returning from medical leave without any legitimate grounds to do so, causing the Plaintiff to suffer damages as aforesaid, and thereby depriving the Plaintiff of rights secured under the MFMLA.

### Count Five
### Massachusetts Anti Discrimination Statute, M.G.L. ch. 151B §1, *et seq.*

65. The actions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against the Plaintiff in employment on account of her disability insofar as the Plaintiff's disability was a motivating factor in Defendants' discriminatory and abusive conduct toward the Plaintiff in violation of the Massachusetts Antidiscrimination Statute, M.G.L. ch. 151B §1, *et seq.* ("Chapter 151B"), causing the Plaintiff to suffer damages as aforesaid, and thereby deprived the Plaintiff of rights secured under Chapter 151B.

## Count Six
## The Massachusetts Overtime Act, M.G.L. ch. 151 §1, *et seq.*

66. The actions of Defendant Family Dollar constitute violations of the Massachusetts Overtime Act insofar as the Plaintiff was not an exempt employee and worked in excess of forty (40) hours per week for nearly every week for which she worked and was never paid at a rate of one and half times her regular rate, all as required by the Overtime Act, entitling her to treble damages, litigation expenses and attorney's fees.

## Count Seven
## Intentional Infliction of Emotional Distress

67. The actions of Defendants Lineberger and Frazier, including but not limited to those described herein, constitute intentional infliction of emotional distress insofar as the aforementioned Defendants undertook a course of treatment of the Plaintiff that was extreme and outrageous with the intention of causing the Plaintiff to suffer from severe emotional distress and the Plaintiff did suffer from said severe emotional distress, suffering damages as aforesaid.

## Count Eight
## Tortious Interference with Contractual Relations

68. The actions of Defendants Lineberger and Frazier, including but not limited to those described herein, constitute tortious interference with contractual relations as to the Plaintiff's employment with Family Dollar insofar as Defendants intentionally and improperly interfered with the Plaintiff's employment contract, preventing the Plaintiff from performing the contract by causing her to be unjustly terminated, resulting in substantial interference with his contract for employment and causing her to suffer damages as aforesaid.

## VI.  Prayers for Relief

**WHEREFORE**, the Plaintiff prays that this Honorable Court enter judgment:

a.      Declaring the acts and practices complained of herein as being in violation of the aforementioned federal and state statutes.

b.      Awarding the Plaintiff back pay and front pay and benefits that will adequately compensate her in the manner she would have been so compensated had she not been subjected to the unlawful discrimination by Defendants, doubled or trebled in accordance with the applicable statutory provisions.

c.      Awarding the Plaintiff compensatory damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other personal losses.

d.      Awarding the Plaintiff punitive damages for the Defendants' intentional, malicious, and reckless violation of the foregoing federal and state statutes.

e.      Awarding the Plaintiff compensatory and punitive damages for Defendants' intentional infliction of emotional distress.

f.      Awarding the Plaintiff compensatory and punitive damages for Defendants tortious interference with the Plaintiff's employment contract.

g.      Awarding the Plaintiff reasonable attorneys fees, costs, and witness fees.

h.      Granting such other and further relief as this Honorable Court deems just and proper.

## VII.  **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all counts so triable.

## VIII.  **Designation of Trial Counsel**

Plaintiff hereby designates Michael F. Drywa, Jr., Esquire, as trial counsel.

PLAINTIFF
By her attorneys,
SIMS & SIMS LLP


July 30, 2012                          _____/s/ Michael F. Drywa, Jr._____
                                       Michael F. Drywa, Jr. (BBO#: 642654)
                                       53 Arlington Street
                                       P.O. Box 7367
                                       Brockton, MA 02303
                                       (508) 588-6900
                                       (508) 586-3320 (fax)
                                       michael@simsandsimsllp.com